# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

In the Matter of the Complaint of
Rainy Lake Houseboats, Inc., for
Exoneration from, or Limitation of,
Liability.

Civil No. 14-1373 (DWF/LIB)

**MEMORANDUM
OPINION AND ORDER**

---

Brian N. Toder, Esq., Chestnut Cambronne, PA, counsel for Plaintiff, Cross-Defendant,
and Counter-Defendant Rainy Lake Houseboats, Inc.

Jason M. Stoffel, Esq., and Timothy W. Waldeck, Esq., Waldeck Law Firm, P.A.,
counsel for Defendant, Cross-Claimant, and Counter-Claimant Hope Evangelical
Lutheran Church.

John P. Brendel, Esq., and Sylvia Ivey Zinn, Esq., Brendel & Zinn, Ltd., counsel for
Counter-Claimant Susan Anderson and Cross-Defendant Scott Anderson.

---

## INTRODUCTION

This matter is before the Court on Rainy Lake Houseboats, Inc.'s ("Rainy Lake

Houseboats") Motion for Summary Judgment.  (Doc. No. 34.)  For the reasons set forth

below, the Court grants in part and denies in part the motion.

## BACKGROUND

### I.     The Parties

Rainy Lake Houseboats is a Minnesota corporation that owns, maintains, and

operates a fleet of approximately twenty-eight Skipperliner houseboat vessels on Rainy

Lake, near Voyageur's National Park.  (*See* Doc. No. 39 ("Dougherty Decl.") ¶ 1.)

Hope Evangelical Lutheran Church ("HELC") is a church located in Fergus Falls, Minnesota.  (Doc. No. 37 ("Dawson Decl.") ¶ 9, Ex. 7 ("HELC's Answer") ¶ 3.)  HELC has a youth ministry program that organizes youth trips.  (*Id.* ¶ 5; Doc. No. 23 ("HELC's Statement of the Case") at 1-2.)

Scott Anderson and Susan Anderson (the "Andersons") are the Trustees and parents of Decedent Briggs Anderson.  (Doc. No. 24 ("Andersons' Statement of the Case") at 1.)

## II.    The Hope Youth Trip

In the spring of 2013, HELC Youth Pastor and Pastoral Assistant, Allan Westby ("Westby"), planned and organized a youth trip that was to take place in Voyageurs National Park from July 29, 2013 through August 1, 2013 on two houseboats rented from Rainy Lake Houseboats (the "Hope Youth Trip").  (Doc. No. 45 ("Stoffel Decl.") ¶ 4, Ex. 2 ("Westby Decl.") ¶¶ 1-2, 4.)  Westby, HELC Pastor Jon Olson ("Olson"), and Jodi Knutsen ("Knutsen") were the designated chaperones for the Hope Youth Trip. (Westby Decl. ¶ 11; Stoffel Decl. ¶ 5, Ex. 3 ("Olson Decl.") ¶¶ 1-2; HELC's Statement of the Case at 1.)  Briggs Anderson, a minor, was among the participants on the Hope Youth Trip.  (HELC's Answer ¶ 9; Andersons' Statement of the Case at 1.)

On July 29, 2013, the Hope Youth Trip group (the "HELC group") arrived at Rainy Lake.  (Westby Decl. ¶ 8; Olson Decl. ¶ 6; HELC's Statement of the Case at 1.) Upon arrival, the HELC group proceeded to check in with Rainy Lake Houseboats, which involved finalizing payment and signing the boat rental agreement ("Bare Boat Charter Agreement").  (Westby Decl. ¶ 8; Olson Decl. ¶ 6; Dawson Decl. ¶ 3, Ex. 1

("Bare Boat Charter Agreement") at 1.)  The Bare Boat Charter Agreement provides in relevant part that:  "During the period of this agreement the Bare Boat Charterer shall have full and exclusive command, control, use, possession and navigation of the vessel." (Bare Boat Charter Agreement at 2.)  "Charterer" is defined as "the person signing this agreement" (*id.*), and it is undisputed that Westby signed as "Bare boat charterer" on the Bare Boat Charter Agreement (*see* Westby Decl. ¶ 22; Dawson Decl. ¶ 3; *see also* Bare Boat Charter Agreement at 1).

During the check-in process, Rainy Lake Houseboats provided the HELC group with the Houseboat Instruction Manual and the Houseboats Briefing Instructions.  (HELC Statement of the Case at 1; Westby Decl. ¶ 8; Olson Decl. ¶ 6; *see also* Stoffel Decl. ¶ 9, Ex. 7 ("Houseboat Instruction Manual"); Stoffel Decl. ¶ 7, Ex. 5 ("Houseboats Briefing Instructions").)

After checking in, the HELC group loaded the two houseboats with their belongings and gear.  (Stoffel Decl. ¶ 6, Ex. 4 ("Schroeder Decl.") ¶ 6.)  Once the houseboats were loaded, a Rainy Lake Houseboats employee, Jakob Ettestad ("Ettestad"), met with Olson, Westby, and an 18-year-old attendee of the trip, Jordan Schroeder ("Schroeder"), and provided them with instructional briefing regarding the use and operation of the houseboats.  (Westby Decl. ¶¶ 9-10; Olson Decl. ¶ 7.)

The parties dispute the substance and duration of the instructional briefing. Rainy Lake Houseboats asserts that the briefing was comprehensive and lasted approximately forty-five minutes in duration.  (Doc. No. 38 ("Ettestad Decl.") ¶¶ 5-6; Doc. No. 47 ("Zinn Aff.") ¶ 7, Ex. F ("Ettestad Dep.") at 33.)  Rainy Lake Houseboats

contends that during the course of the briefing, Ettestad clearly communicated to Westby and the other adults that, on any vessel, the generator must not be operated while passengers or crew are swimming because of the discharge and danger of carbon monoxide. (Ettestad Decl. ¶ 7.) Rainy Lake Houseboats further contends that at the end of the briefing, Ettestad gave the adults another verbal warning about the dangers of carbon monoxide and had Westby read and sign the Houseboats Briefing Instructions to acknowledge that he understood the danger of running a generator while someone is swimming. (*Id.* ¶ 8; *see also* Houseboats Briefing Instructions.)

HELC, on the other hand, asserts that that the briefing instructions focused on general information and lasted between five and ten minutes in total. (Westby Decl. ¶¶ 14, 29-30; Olson Decl. ¶¶ 11, 24-25.) HELC asserts that Westby and Olson were not given adequate warning of the dangers of carbon monoxide associated with use of the houseboats rented to them, including the danger of swimming while the engine or generator were running. (Westby Decl. ¶¶ 35-36; Olson Decl. ¶¶ 29-30.) HELC further asserts that based on the instructions, Westby and Olson understood that the generator should only be turned off at nighttime. (Westby Decl. ¶ 19; Olson Decl. ¶ 16.) Although Westby does not dispute signing the Houseboats Briefing Instructions and initialing the carbon monoxide warning line, Westby asserts that he was provided no verbal warning about the generator, the engine, or carbon monoxide when he was given the Houseboats Briefing Instructions to acknowledge and sign. (Westby Decl. ¶¶ 22, 24, 25.)

After the briefing, the HELC group navigated the houseboats to their campsite location on Rainy Lake where they moored and began preparing for the evening. (*Id.*

¶ 32; Olson Decl. ¶ 26; HELC's Statement of the Case at 2.)  During downtime before the evening meal, Briggs Anderson was swimming near one of the houseboats while the generator was running.  (HELC's Answer ¶ 10; HELC's Statement of the Case at 2.)

At some point while swimming, Briggs Anderson was rendered unconscious. (HELC's Answer ¶ 10; Dawson Decl. ¶ 11, Ex. 9 ("Rainy Lake Houseboats' Answer") ¶ 5.)  Briggs Anderson passed away later that evening.  (HELC's Answer ¶ 10; Ettestad Dep. at 45-46.)  The Andersons assert that Briggs Anderson passed away as a result of carbon monoxide poisoning.  (Dawson Decl. ¶ 7, Ex. 5 ("Andersons' Letter"); *see also* Dawson Decl. ¶ 6, Ex. 4 ("Autopsy Report").)

## III.   Procedural History

On February 3, 2014, Scott Anderson, individually and as a Trustee of Briggs Anderson, filed a wrongful death action against HELC and Rainy Lake Houseboats in Otter Tail County District Court.  (Dawson Decl. ¶ 8, Ex. 6.)  HELC and Rainy Lake Houseboats filed respective answers in the state proceeding.  (Dawson Decl. ¶¶ 9, 10, Exs. 7, 8.)

On May 1, 2014, Rainy Lake Houseboats commenced the present action in federal court seeking exoneration from or limitation of liability for all claims arising from the July 29, 2013 incident on Rainy Lake.  (Doc. No. 1 ("Rainy Lake Houseboats' Compl.").)  Specifically, Rainy Lake Houseboats claims:  (1) "exoneration from liability for any loss, damages or injury occasioned or incurred by reason of the incident involving the death of Briggs Anderson"; or alternatively, (2) "the benefit of limitation of a vessel owner's

liability under Title 46, United States Code, § 30505, and of the various statutes, rules and regulations supplemental thereto, and amendatory thereof." (*Id.* ¶¶ 14, 16.)

On May 14, 2014, this Court issued an Order staying the Otter Tail County proceeding pending the resolution of the above-entitled matter. (*See* Doc. No. 7.)

On May 15, 2014, the Clerk of Court issued a Notice of Complaint for Exoneration from, or Limitation of, Liability in response to Rainy Lake Houseboats' Complaint. (Doc. No. 8.) The Notice of Complaint provides that: "[a]ll persons having a claim arising out of the July 29, 2013 incident must, no later than June 25, 2014, file a claim as provided by Rule F of the Supplemental Rules for Admiralty or Maritime Claims with the Clerk of Court"; and "[a]ny claimants who desire to contest plaintiff's right to exoneration from, or limitation of, liability must, in addition to filing and serving a claim, also file and serve an answer to plaintiff's complaint as required by Rule F(5) of the Supplemental Rules for Admiralty and Maritime Claims." (*Id.* at 1.)

On June 3, 2014, HELC filed an Answer, Claim, and Complaint. (Doc. No. 11 ("HELC's Compl.").) In HELC's Complaint, HELC claims: (1) "exoneration from liability for any loss, damages or injury occasioned or incurred by reason of the death of Briggs Anderson, and from any claims arising therefrom"; or, alternatively, (2) "the benefit of limitation of a vessel and owner's liability provided under Title 46 U.S.C. § 30505 in that as a Charterer is provided the protections of an owner in the form of exoneration and limitation of liability." (*Id.* ¶¶ 14, 18.)

On June 24, 2014, the Andersons filed an Answer and Claim to Rainy Lake Houseboats' Complaint. (Doc. No. 12 ("Andersons' Answer").) In the Anderson's

Answer, they request that the Court:  (1) "[d]eny [Rainy Lake Houseboats'] Complaint for Exoneration or Limitation of Liability"; or, alternatively, (2) "[a]djudge that [Rainy Lake Houseboats] is liable and responsible for the death of Briggs Anderson, and that the damages associated with the death of Briggs Anderson are greater than the value of the vessel or [Rainy Lake Houseboats'] interest in the vessel." (*Id.* at 3.)

On June 24, 2014, Rainy Lake Houseboats filed a Response to HELC's Complaint for Exoneration and Limitation of Liability in the Alternative.  (Doc. No. 13 ("Rainy Lake Houseboats' Response").)

On July 21, 2014, the Clerk of Court issued a Notice of Complaint for Exoneration from, or Limitation of, Liability in response to HELC's Complaint.  (Doc. No. 20.)  The Notice of Complaint provides that:  "[a]ll persons having a claim arising out of the July 29, 2013 incident must, no later than August 21, 2014, file a claim as provided by Rule F of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions with the Clerk of Court"; and "[a]ny claimants who desire to contest plaintiff's right to exoneration from, or limitation of, liability must, in addition to filing and serving a claim, also file and serve an answer to plaintiff's complaint as required by Rule F(5) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions." (*Id.* at 1.)

On August 21, 2014, the Andersons filed an Answer and Claim to HELC's Complaint.  (Doc. No. 22.)  In their Answer, the Andersons request that the Court: (1) "[d]eny the Complaint of HELC for Exoneration or Limitation of Liability"; or, alternatively, (2) "[a]djudge that HELC is liable and responsible for the death of Briggs

Anderson, and that the damages associated with the death of Briggs Anderson are greater than the value of the vessel or the interest of HELC in the vessel." (*Id.* at 3.)

Rainy Lake Houseboats now moves for summary judgment. (Doc. No. 34.)

## DISCUSSION

### I.    Standard of Review

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the evidence, and the inferences that may be reasonably drawn from the evidence, in the light most favorable to the nonmoving party. *Weitz Co. v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009). However, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

II.     **Rainy Lake Houseboats' Motion for Summary Judgment**

Rainy Lake Houseboats moves for summary judgment seeking the following relief:  (1) dismissal of "the purported claims and purported petition in limitation of Hope Evangelical Lutheran Church ('HELC') with prejudice and on the merits on the grounds that HELC has failed to state a claim upon which relief can be granted, and on the grounds that HELC[] failed to file its petition as the Limitation Act,  46 U.S.C. § 30501-30512, requires"; (2) a declaration that Rainy Lake Houseboats is "without the requisite privity or knowledge of, and thereby exonerated from any liability for the claim brought by Scott Anderson and Susan Anderson" or, alternatively, a declaration "limiting any liability of [Rainy Lake Houseboats] to an amount equal to the value of the vessel and her freight then pending in the amount of [f]orty thousand dollars ($40,000)"; and (3) dismissal of the "above-entitled matter in its entirety thereafter leaving Trustees and HELC free to litigate the matter in Otter Tail County."  (Doc. No. 34 ¶¶ 1-4.)  The Court addresses each argument in turn.

A.     **Dismissal of HELC's Claims and Petition**

1.     **Rainy Lake Houseboats' Standing to Challenge HELC's Claims and Petition**

Before reaching the merits of Rainy Lake Houseboats' motion for dismissal of HELC's claims and petition for exoneration or limitation of liability, the Court must first address HELC's challenge to whether Rainy Lake Houseboats has constitutional and statutory standing to bring its motion for dismissal.

### a.       Constitutional Standing

HELC argues that Rainy Lake Houseboats lacks constitutional standing to seek dismissal of HELC's petition seeking exoneration and limitation of liability.  (Doc. No. 44 at 19.)

In order for a party to have standing under Article III of the United States Constitution, that party must show that:  it suffered or will suffer an injury; the injury is traceable to the defendant's conduct; and a favorable federal court decision will likely redress the injury.  *Bennett v. Spear*, 520 U.S. 154, 117 (1997); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  These requirements are meant to "assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action."  *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State*, 454 U.S. 464, 472 (1982).

HELC argues that Rainy Lake Houseboats has pled no injury that is traceable to HELC sufficient to invoke constitutional standing.  (Doc. No. 44 at 19.)  HELC asserts that "[n]owhere in its Answer does Rainy Lake [Houseboats] allege that HELC caused Rainy Lake [Houseboats] any injury" and that "[o]ther than the admissions and denials, Rainy Lake [Houseboats]'s two affirmative allegations made against HELC are that HELC's Complaint fails to state a claim for which relief can be granted and that HELC has not complied with Rule F."  (*Id.*)  HELC further asserts that "because Rainy Lake [Houseboats] seeks no damages from HELC by means of a claim, Rainy Lake [Houseboats] stands to gain, or lose, nothing based on the Court's determination

regarding HELC's limitation Complaint." (*Id*.) Accordingly, HELC argues that "Rainy Lake [Houseboats] can be afforded no redress by any Federal Court decision based on HELC's limitation Complaint." (*Id.* at 20.)

Rainy Lake Houseboats argues that "[a]s to Article III standing, the logic that gives claimant status to a party seeking indemnity is applicable in the matter at bar." (Doc. No. 48 at 10.) Rainy Lake Houseboats contends that "[i]f the Court allows HELC to limit its liability to the value of the Vessel, $40,000, and [Rainy Lake Houseboats] spends $100,000 defending itself, it can only recoup $40,000 from HELC." (*Id.*) Rainy Lake Houseboats further asserts that it is "presently losing money and stands to lose more." (*Id.*)

The Court concludes that Rainy Lake Houseboats has constitutional standing to challenge HELC's petition and claims in this case. On the record before the Court, it cannot be said that Rainy Lake Houseboats has no stake in this litigation. Although Rainy Lake Houseboats' indemnification claims are, by their very nature, contingent upon a future finding of liability,[1] in circumstances such as this, with a "concursus" of claims arising out of the same maritime casualty, and at this stage in the proceedings, the Court concludes that Rainy Lake Houseboats has presented sufficient allegations to ensure that a justiciable controversy is before the Court. *See Valley Forge Christian*

---

[1]    Ironically, Rainy Lake Houseboats, seemingly unaware of the apparent contradiction, asserts that HELC's indemnity and contribution claims against Rainy Lake Houseboats are "premature" and "purely hypothetical" because they are "viable only if there first exists a judgment against HELC." (Doc. No. 36 at 18.)

*Coll.*, 454 U.S. at 472.  Therefore, the Court finds that Rainy Lake Houseboats has

constitutional standing to challenge HELC's petition and claims.

### b.      Statutory Standing

HELC argues that Rainy Lake Houseboats lacks statutory standing under

Rule F(5) of the Supplemental Federal Rules of Civil Procedure because Rainy Lake

Houseboats has only filed an answer to HELC's Complaint, but has not filed a claim

against HELC.  (Doc. No. 44 at 16.)

"Rule F(5) creates statutory standing requirements for challenging limitation

actions."  *In re Am. River Transp. Co.*, 728 F.3d 839, 842 (8th Cir. 2003).  Rule F(5)

requires that "[i]f a claimant desires to contest either the right to exoneration from or the

right to limitation of liability the claimant shall file and serve an answer to the complaint

unless the claim has included an answer."  Fed. R. Civ. P. Supp. R. F(5); *see also, e.g.*,

*In re Triton Asset Leasing GmbH, et al.*, 719 F. Supp. 2d 753, 765 (S.D. Tex. 2010)

(finding that Rule F(5) requires that a claim be filed first or contemporaneously with an

answer as a prerequisite to contesting an entitlement to exoneration and/or limited

liability).  "The purpose of this rule is to consolidate all pending and potential claims

against the owner of the vessel in one Limitation proceeding."  *White v. Sabatino*,

415 F. Supp. 2d 1163, 1180 (D. Haw. 2006); *see also In re Am. River Transp. Co.*, 728

F.3d at 842 ("The purpose of Rule F(5) . . . is to bring all potentially interested parties

into one proceeding to address competing claims to certain property.").

HELC maintains that "the text of the rule makes clear that filing a claim is a

prerequisite to filing an Answer."  (Doc. No. 44 at 17.)  HELC contends that "[e]ven

though Rainy Lake [Houseboats] did in fact file an Answer to HELC's limitation

Complaint, this Answer is not a claim, and no claim was asserted therein." (*Id.* at 18.) In

addition, HELC contends that "Rainy Lake [Houseboats]' Limitation Complaint also

does not constitute a claim because it merely seeks limitation and exoneration for itself,

was filed a month before HELC's limitation Complaint, and seeks no monetary damages

from HELC." (*Id.*) Therefore, HELC argues that "[b]ecause Rainy Lake [Houseboats]

made no claim against HELC, it fails to meet the clearly established Rule F(5) standing

requirements to challenge HELC's limitation Complaint, and Rainy Lake [Houseboats]'

motion seeking the dismissal of HELC's limitation Complaint must be denied." (*Id.*)

Rainy Lake Houseboats argues that its Response to HELC's Complaint for

Exoneration and Limitation of Liability in the Alternative (Doc. No. 13) was in fact a

"Claim" for purposes of Rule F(5). (Doc. No. 48 at 8.) Rainy Lake Houseboats contends

that it is "aware of no rule requiring a claim to be called a 'claim' if in fact it is a claim,"

and that its filing "is in fact a claim, because it asks for attorneys fees, and attorneys fees

are awardable by the terms of the Bareboat Charter Agreement." (*Id.*) Rainy Lake

Houseboats asserts that "[t]he motivation for [it] to plead as it did is borne of the fact that

calling itself a claimant would somewhat validate HELC's right to petition." (*Id.* at 10.)

The Court concludes that Rainy Lake Houseboats has statutory standing in this

case to challenge HELC's claims and petition for exoneration from or limitation of

liability. In light of the purpose of Rule F(5), the liberal pleading policy of the Federal

Rules of Civil Procedure, and Rainy Lake Houseboats' posture as a preexisting party in

this limitation proceeding, the Court determines that Rainy Lake Houseboats' Response

to HELC's Complaint for Exoneration and Limitation of Liability in the Alternative

(Doc. No. 13) is sufficient to satisfy the intent of Rule F(5) and is reasonably construed as

both as a claim and answer to HELC's petition under Rule F(5).  Therefore, the Court

concludes that Rainy Lake Houseboats has statutory standing to challenge HELC's

petition and claims.

### 2.    HELC's Claims and Petition under the Limitation Act

Rainy Lake Houseboats argues that HELC's claims and petition under the

Limitation Act should be dismissed on the grounds that:  (1) HELC's petition is untimely;

and (2) HELC has failed to state a claim upon which relief can be granted.  (Doc. No. 36

at 11-18.)

### a.    Timeliness of HELC's Petition

Rainy Lake Houseboats contends that HELC's petition under the Limitation Act

was not timely filed, and therefore, must be dismissed.  (*Id.* at 14.)  Specifically,

Rainy Lake Houseboats contends that HELC's action is untimely pursuant to 46 U.S.C.

§ 30511 and Rule F(1) of the Supplemental Rules of Civil Procedure because it was filed

more than six months after HELC received written notice of the Andersons' claim.  (*Id.*

at 18.)

To commence a proceeding for exoneration or limitation of liability under the

Limitation Act, "[t]he owner of a vessel[2] may bring a civil action in a district court of the

---

[2]     Under the Limitation Act, the term "owner" is defined to include demise or bareboat charterers, that is, "a charterer that mans, supplies, and navigates a vessel at the charterer's own expense or by the charterer's own procurement."  46 U.S.C. § 30501.

(Footnote Continued on Next Page)

United States for limitation of liability . . . within 6 months after a claimant gives the

owner written notice of a claim."[3]  46 U.S.C. § 30511(a); *see also*

Fed. R. Civ. P. Supp. R. F(1) ("Not later than six months after receipt of a claim in

writing, any vessel owner may file a complaint in the appropriate district court . . . for

limitation of liability pursuant to statute.").  "If a petition is not filed within the six-month

period, it is dismissed as untimely."  *In re Exxon Shipping Co.*, 869 F.2d 843, 846 (5th

Cir. 1989); *see also Paradise Divers, Inc. v. Upmal*, 402 F.3d 1087, 1090 (11th Cir.

2005) (noting that the time limit for owners to file a petition is "strictly enforced").  "The

purpose of the six-month prescription on the limitation of liability petition is to require

the shipowner to act promptly to gain the benefit of the statutory right to limit liability."

*In re Exxon Shipping Co.*, 869 F.2d at 846 (citing *In re Goulandris*, 140 F.2d 780, 781

(2d Cir. 1944)).

Although the "written notice of a claim" need not be presented in a particular

form, the notice must "communicate[] the *reasonable possibility* of a claim" and

"communicate[] the *reasonable possibility* of damages in excess of the vessel's value."

*See In re RLB Contracting, Inc.*, 773 F.3d 596, 602 (5th Cir. 2014) (emphasis in

---

(Footnote Continued From Previous Page)
Here, Rainy Lake Houseboats "concedes that HELC is a charterer within the meaning of
the Limitation Act."  (Doc. No. 36 at 14.)  The Court agrees, and finds that HELC
expressly meets the definition of "owner" for purposes of the Limitation Act.

[3]      46 U.S.C. § 30511 and Rule F(1) also require, as Rainy Lake Houseboats correctly
asserts, that the vessel owner "deposit with the court, for the benefit of claimants . . . an
amount equal to the value of the owner's interest in the vessel and pending freight, or
approved security" upon filing a complaint for limitation.  46 U.S.C. § 30511(b)(1), (2);
*see also* Fed. R. Civ. P. Supp. R. F(1) (substantially similar).

original); *see also Norfolk Dredging Co. v. Wiley*, 357 F. Supp. 2d 944, 947 (E.D. Va. 2005) ("It is well-settled that a letter sent by a claimant (or a claimant's attorney) to a vessel owner may constitute notice of a claim, and such notice may be sufficient to trigger the six month statute of limitations.").  "Whether a written notice reveals a 'reasonable possibility' that the claim will exceed the value of the vessel requires the court to engage in a fact-intensive inquiry into the circumstances of the case." *In re Eckstein Marine Serv., LLC*, 672 F.3d 310, 317 (5th Cir. 2012).  "When there is uncertainty as to whether a claim will exceed the vessel's value, the reasonable possibility standard places the risk and the burdens associated with that risk on the owner." *Id.* at 318; *see also In re Morania Barge*, 690 F.2d 32, 34 (2d Cir. 1982) ("[E]ven when doubt exists as to the total amount of the claims or as to whether they will exceed the value of the ship[,] the owner will not be excused from satisfying the statutory time bar since he may institute a limitation proceeding even when the total amount claimed is uncertain.").

Rainy Lake Houseboats argues that "[o]n November 5, 2013, the Trustees provided both [Rainy Lake Houseboats] and HELC with a claim in writing within the meaning of the Limitation Act and Rule F."  (Doc. No. 36 at 2.)  Specifically, Rainy Lake Houseboats asserts that "the first legally sufficient written notice of claim was the e-mail of November 5, 2013 sent to both [Rainy Lake Houseboats] and HELC, where counsel for the Trustee concludes that, based upon documents provided, it intended to make a claim against both [Rainy Lake Houseboats] and the Trustee; it invited 'mediation.'" (*Id.*

at 17-18.)  Rainy Lake Houseboats maintains that it "filed its petition within the requisite six months; HELC did not."  (*Id.* at 18.)

HELC asserts that dismissal is improper because the six-month period commenced on December 11, 2013, not on November 5, 2013.  (Doc. No. 44 at 23.)  HELC maintains that the November 5, 2013 letter did not constitute adequate notice of a claim against HELC by the Trustees because the letter contains "no actual claim or demand made of HELC."  (*Id.* at 22.)  Specifically, HELC asserts that in the November 5, 2013 letter, "[t]here is no demand for any monetary sum at all, let alone a sum exceeding the value of [the vessel]" and "the details of the occurrence giving rise to any claim are not provided, and the letter includes no clear statement of blame concerning HELC, or statement of an intention to seek damages from HELC."  (*Id.*)  Instead, HELC contends that "the first cognizable claim made by the Andersons to HELC came on December 11, 2013" when counsel for the Andersons sent a letter that "1) manifest[ed] an intent to commence suit; 2) detail[ed] the circumstances of the death of Briggs Anderson; 3) ma[d]e a statement appearing to assert fault as against HELC and Rainy Lake; and 4) ma[d]e a demand for a sum in excess of the value of [the vessel]."  (*Id.*)  Consequently, HELC argues that "[b]ecause HELC filed its limitation Complaint on June 3, 2014, which was within the six month period following December 11, 2013, its Complaint was timely filed, and the Court should deny Rainy Lake [Houseboats]'s motion for summary judgment on this issue."  (*Id.* at 23.)

The Andersons maintain that "[t]he arguments Rainy Lake [Houseboats] makes for dismissal of the HELC Complaint . . . apply equally to Rainy Lake [Houseboats]."

(Doc. No. 46 at 3.)  The Andersons assert that "Rainy Lake [Houseboats] had written notice of the claim by email of September 12, 2013," but "[its] Complaint seeking exoneration or limitation of liability was not filed until May 1, 2014, well beyond the required six month filing period.  (*Id.* at 1.)  The Andersons contend that the initial September 12, 2013 e-mail, as well as two subsequent e-mails on September 19, 2013, and September 30, 2013 "provided to Rainy Lake [Houseboats] notice of an actual or potential claim, which would exceed the value of the houseboat."  (*Id.* at 2-3.)  The Andersons state that "[w]hile the wording of the emails was not more specific as to the origin of the carbon monoxide, the substance of the communication was sufficient, as Rainy Lake [Houseboats] immediately hired counsel for its protection."  (*Id.* at 3.)  The Andersons argue that "[c]learly, Rainy Lake [Houseboats] knew of the claim, and appreciated the significance of the situation by retaining counsel to protect its interests" and that "Rainy Lake [Houseboats] should not now be able to claim ignorance seeking to deny its knowledge and further limit its liability in connection with this tragedy."  (*Id.*)

The Court concludes that the Andersons gave Rainy Lake Houseboats and HELC "written notice of a claim" by letter on November 5, 2013.  The November 5, 2013 letter from counsel for the Andersons to counsel for HELC and Rainy Lake Houseboats states:

> Thank you for the documents and information provided.  It seems clear from these documents that the risk associated with the carbon monoxide exposure was well known to [HELC] and Rainy Lake Houseboats.  Briggs died as a result of carbon monoxide poisoning, as reflected in the attached autopsy report.
>
> The death of Briggs is extremely difficult for his family.  If at all possible, I would like to bring some closure for the Anderson family.

> Given the experience of all counsel involved, please let me know if you and your clients are willing to participate in an early mediation.  If that is unrealistic, please let me know your position on liability so we may move forward as needed.

(Andersons' Letter.)  The case summary of the accompanying autopsy report for Decedent states "Briggs Anderson drowned, but his drowning was due to carbon monoxide poisoning.  He was poisoned by the exhaust from a boat generator which was near to where he was swimming."  (Autopsy Report at 3.)

Read in its entirety, the November 5, 2013 letter and attachment from counsel for the Andersons to counsel for HELC and Rainy Lake Houseboats is a notice of claim within the meaning of 46 U.S.C. § 30511 and Rule F(1).  The November 5, 2013 letter informed HELC and Rainy Lake Houseboats of the possibility that both parties would be held liable for Decedent's death.  The details of incident and Decedent's death were already known to HELC and Rainy Lake Houseboats, and, therefore, the notice did not need to repeat that which was already known and did not need to expressly set forth what they could reasonably infer from its contents.  Although HELC criticizes the Andersons' letter for insufficient detail regarding the claims and for failing to assert any blame against HELC, the issue here is the "reasonable possibility" that a claim *exists*, not probability of success on the merits.  *See In re RLB Contracting*, 774 F.3d at 602.

Moreover, although the Andersons' letter did not specify the amount of damages sought, HELC and Rainy Lake Houseboats had the burden of investigating further whether the amount of the claim could exceed the value of the vessel.  To the same extent that HELC and Rainy Lake Houseboats had notice of the Andersons' potential wrongful

death suit, they had notice that there was a reasonable possibility of damages in excess of $40,000, even though the Andersons' letter never gave a specific number.  HELC and Rainy Lake Houseboats should have reasonably anticipated that an action involving the death of a child would easily exceed $40,000 in potential damages.

In summary, the Court finds that the November 5, 2013 letter from counsel for the Andersons to counsel for HELC and Rainy Lake Houseboats constitutes a written notice of claim within the meaning of 46 U.S.C. § 30511 and Rule F(1).  Both HELC and Rainy Lake Houseboats had notice of a claim by the time they received the Andersons' letter, months after the death of Briggs Anderson, culminating in the ultimate filing of the wrongful death lawsuit in Otter Tail County on February 3, 2014.  Here, it is undisputed that Rainy Lake Houseboats filed its limitation petition on May 1, 2014, and that HELC filed its limitation petition on June 3, 2014.  Because HELC's petition was not filed with this Court within six months of the November 5, 2013 letter, it must be dismissed as untimely.

### 3.    Failure to State a Claim for Relief

Rainy Lake Houseboats seeks dismissal of HELC's claims with prejudice on the grounds that HELC has failed to state a claim upon which relief can be granted.  (Doc. No. 36 at 18.)  Rainy Lake Houseboats argues that "[o]ther than its purported claim under the Limitation Act and a litany of admissions and denials, the only claim made by HELC against [Rainy Lake Houseboats] is for 'indemnity and/or contribution.'"  (*Id.*)  As noted previously, Rainy Lake Houseboats contends that HELC's indemnity claim is "obviated by the Bare Boat Charter Agreement and is otherwise premature" and that HELC's

contribution claim is "purely hypothetical," and therefore fails to state a ground for which relief can be granted." (*Id.*)

For the reasons set forth above, the Court denies Rainy Lake Houseboats' motion to dismiss HELC's claims against Rainy Lake Houseboats insofar as it seeks indemnification and/or contribution from Rainy Lake Houseboats.

### B.      Rainy Lake Houseboats' Exoneration or Limitation of Liability

Rainy Lake Houseboats seeks a declaration that it is entitled to exoneration with respect to liability for the death of Decedent because it lacked privity and knowledge of the accident.  (Doc. No. 36 at 12-13.)

Under the Limitation Act, Rainy Lake Houseboats must prove that it is without "privity or knowledge" over the events which led to the accident in question.  *See* 46 U.S.C. § 30505(b) (providing that only claims arising from an accident that occurred "without the privity or knowledge of the owner" are subject to limitation).  "Privity or knowledge" generally refers to the vessel owner's personal participation in, or his actual knowledge of, the specific acts of negligence, or conditions of unseaworthiness, which caused or contributed to the accident." *Suzuki of Orange Park, Inc. v. Shubert*, 86 F.3d 1060, 1064 (11th Cir. 1996); *see also In re Messina*, 564 F.3d 119, 126 (2d Cir. 2009) ("The phrase 'privity or knowledge' is a 'term of art meaning complicity in the fault that caused the accident.") (internal citations omitted).  "Where the owner's negligent act caused the alleged injury . . . all of the requirements of 'privity' are satisfied." *In re Messina*, 564 at 126.  "Privity[,] like knowledge[,] turns on the facts of particular cases." *Coryell v. Phipps*, 317 U.S. 406, 411 (1943).

21

Rainy Lake Houseboats argues that the fact that HELC was operating the vessel at the time of the accident precludes a showing of lack of "privity or knowledge" on its part and thus provides the Court with a sufficient basis on which to deny the petition for exoneration from or limitation of liability.  (*See* Doc. No. 36 at 13-14.)  Specifically, Rainy Lake Houseboats argues that it "relinquished, and HELC assumed, possession, command and navigation of the Vessel when it sailed away from [Rainy Lake Houseboats]'s facilities."  (*Id.* at 13.)  Rainy Lake Houseboats further contends that it had no part in, nor was it aware of, HELC's activities.  (*Id.*)  Rainy Lake Houseboats argues that "[t]he tragic event was not foreseeable to [Rainy Lake Houseboats], because it not only warned the experienced Mr. Westby, it required HELC to execute a written warning memorializing that it understood the dangers of carbon monoxide poisoning caused by a vessel operating its generator while passengers or crew were swimming."  (*Id.*)  Accordingly, Rainy Lake Houseboats argues that "there is zero privity or knowledge attributable to [Rainy Lake Houseboats]" and that "[Rainy Lake Houseboats] is entitled to exoneration, or alternatively, to limit its liability to the value of the Vessel."  (*Id.*)

HELC, on the other hand, argues that the Court should deny Rainy Lake Houseboats' motion for summary judgment as to its own petition seeking exoneration and limitation of liability because:  (1) there are substantial disputes of fact as to Rainy Lake Houseboats' negligence; and (2) Rainy Lake Houseboats is not entitled to exoneration from or limitation of liability as a matter of law because its privity and knowledge with its own negligence directly caused the loss.  (Doc. No. 44 at 25-32.)  First, HELC argues that "the record in this case includes real and direct disputes of

material facts necessitating a denial of Rainy Lake [Houseboats]'s motion for summary judgment." (*Id.* at 31.)  For example, HELC asserts that Olson and Westby declare that they have never heard an oral warning about carbon monoxide, whereas Ettestad stated that he warned as to the risk on three separate occasions.  (*Id.*)  In addition, HELC notes that Westby states that he was handed the Briefing Instructions form without further instruction and asked to sign, whereas Ettestad states that he provided an oral warning at that point and instructed Westby to review the document to confirm that everything was covered and understood.  (*Id.*)  Moreover, HELC asserts that Olson and Westby declare that the entire briefing lasted five to ten minutes, whereas Ettestad testified that the briefing lasted forty-five minutes.  (*Id.* at 32.)  Therefore, HELC argues that "[a]ll of these disputes of fact, go right to the elements of Rainy Lake [Houseboats]'s negligence and are sufficient, in and of themselves, to deny Rainy Lake [Houseboats]'s motion for summary judgment."  (*Id.*)

Second, HELC argues that Rainy Lake Houseboats was in privity and knowledge with its negligence, which ultimately caused the death of Briggs Anderson.  (*Id.* at 27-30.)  In support of this argument, HELC contends "there is substantial evidence in the record demonstrating that Rainy Lake [Houseboats] was negligent in failing to warn HELC members as to the risks of carbon monoxide while houseboating, and because the houseboat it rented to the HELC group was unseaworthy."  (*Id.* at 41.)  HELC asserts that "Rainy Lake [Houseboats]'s negligence is demonstrated by the fact that neither Pastor Olson nor Allan Westby remember receiving any oral warnings related to the risks associated with carbon monoxide."  (*Id.* at 28.)  HELC asserts that Daughtery's

admissions support this conclusion because "he was aware of the imminent danger

presented by houseboats, that it was Rainy Lake [Houseboats]'s responsibility to warn its

guests of the dangers of carbon dioxide, and that he relied on the Briefing Instructions

form as the main way in which he protected guests from that hazard." (*Id.* at 29.)  HELC

argues that "the testimony cited from Westby's deposition demonstrates, in fact, that

[Rainy Lake Houseboats] was in privity and knowledge with its own negligence with

instructing Mr. Westby, and that [the vessel] was unseaworthy." (Doc. No. 57 at 1.)

HELC further argues that the facts show that "Rainy Lake [Houseboats] failed to

adequately and descriptively warn the HELC group as to the dangers of carbon

monoxide, and that if adequate warning had been provided, Mr. Westby would not have

permitted swimming while the generators were running." (*Id.* at 3.)

The Andersons similarly argue that Rainy Lake Houseboats is not entitled to

exoneration from or limitation of liability, given the existence of genuine issues of

material fact and the independent negligence of Rainy Lake Houseboats.  (Doc. No. 46

at 1; Doc. No. 58 at 3.)  First, the Andersons contend that, "with respect to the motion for

summary judgment, the testimony of Westby confirms that there is a genuine issue of

material fact with respect to the thoroughness and detail of briefing provided by the

vessel owner, Rainy Lake [Houseboats], to Westby." (Doc. No. 58 at 3.)  The Andersons

assert that "[w]hether or not that briefing occurred is a question of fact which precludes

Rainy Lake [Houseboats]' request for summary judgment." (*Id.*)  The Andersons further

assert that "[c]redibility of a witness, in this case, Allen Westby, cannot be accurately

determined through a deposition transcript" and that "[a]t the very least, the deposition

highlights the facts in issue which underscores the necessity to deny [the] request for exoneration of limitation of liability." (*Id.* at 4.) Therefore, the Andersons argue that "[i]n light of the existence of genuine issues of material fact, the law requires, and fairness and equity dictate, that the facts are to be determined by a fact finder." (*Id.*)

Second, the Andersons contend that Rainy Lake Houseboats is not entitled to limitation of or exoneration of liability because it is independently negligent due to its failure to warn and communicate the potential hazard posed by carbon monoxide and in its failure to maintain its houseboat. (Doc. No. 46 at 4-6.) The Andersons contend that "[p]rior to the youth trip that took the life of Briggs Anderson, Rainy Lake [Houseboats] was aware of the potential fatal risk posed by carbon monoxide." (*Id.* at 4.) Despite such alleged knowledge, the Andersons argue that Rainy Lake Houseboats failed "to properly warn as to the use of the generator and the potential fatal hazard with mis-use" and that Rainy Lake Houseboats' standard briefing process was not utilized by Ettestad with HELC. (*Id.*) In addition, the Andersons argue that Rainy Lake Houseboats failed to maintain its houseboat in "such a fashion to provide for the safety of passengers" by failing to place a mounted plaque or warning alerting customers to the dangers associated with carbon monoxide on the vessel at issue, thereby constituting "separate, distinct and independent negligence." (*Id.* at 6.) Accordingly, the Andersons contend that "[t]he negligence on the part of Rainy Lake [Houseboats] precludes its attempt to invoke the protection of the Limitation of Liability Act." (*Id.* at 5-6.)

The Court concludes that, taken together, there is sufficient evidence in the record to raise genuine issues of material fact as to whether Rainy Lake Houseboats' briefing

instructions and maintenance of the vessel at issue constitute "acts of negligence or unseaworthiness [that] caused the casualty," and whether Rainy Lake Houseboats "had knowledge or privity of these acts." *See In re Moran Towing Corp.*, 984 F. Supp. 2d 150, 180 (S.D.N.Y. 2013).  Although it is undisputed that HELC was the bareboat or demise charterer of the vessel for purposes of the Limitation Act (*see* Doc. No. 44 at 20 n.1), questions of fact remain as to whether Rainy Lake Houseboats was otherwise negligent, thereby precluding a grant of limitation or exoneration of liability with respect to claims arising from the accident.  Therefore, the Court cannot find, on this motion, that Rainy Lake Houseboats is entitled to exoneration from or limitation of liability.

## ORDER

Based on the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Rainy Lake Houseboats, Inc.'s Motion for Summary Judgment (Doc. No. [34]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a.     The Court grants the motion insofar as it seeks dismissal of HELC's petition for exoneration from or limitation of liability (Doc. No. [11]).

    b.     The Court denies the motion in all other respects.

2.     HELC's Complaint (Doc. No. [11]) seeking exoneration from or limitation of liability is **DISMISSED WITH PREJUDICE**.

3.     The Court urges the parties to consider a settlement to resolve this dispute, with or without the assistance of United States Magistrate Judge Leo I. Brisbois, because

a settlement might well serve the best interests of all parties in this tragic situation.  If the

Court can be of assistance in this matter, the parties should contact Brenda Schaffer,

Calendar Clerk for the undersigned, at (651) 848-1296, or Vicki Miller, Courtroom

Deputy for Magistrate Judge Brisbois, at (218) 529-3520.


Dated:  June 18, 2015                     s/Donovan W. Frank
                                          DONOVAN W. FRANK
                                          United States District Judge